STEPHANIE M. HINDS (CABN 154284)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

SAILAJA M. PAIDIPATY (NYBN 5160007)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-7200
    FAX: (415) 436-7234
    sailaja.paidipaty@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>LUIS ALMICAR ERAZO-CENTENO,<br>    a/k/a "Pika"<br><br>    Defendant. | NO. 19-0367-10 CRB<br><br>**UNITED STATES' SENTENCING MEMORANDUM**<br><br>Judge: Hon. Charles R. Breyer<br>Sentencing Date: February 16, 2022<br>Time: 1:30 p.m. |

## I.   INTRODUCTION

Defendant Luis Almicar Erazo-Centeno worked as one of many street-level drug dealers in the drug trafficking organization run by co-defendants Eduardo Viera-Chirinos and Karen Castro-Torres. As he admitted in his plea agreement and as illustrated through numerous intercepted calls, Erazo-Centeno purchased ounces of drugs at a time from members of the Viera-Chirinos organization that he then resold on the streets of the Tenderloin. A review of his criminal history indicates that Erazo-Centeno began selling drugs in San Francisco several years before the current federal conduct. He was

arrested initially in 2013 conducting narcotics transactions with co-defendant Cilder Velasquez. At the time of the federal investigation, Erazo-Centeno had a pending state drug trafficking case stemming from an arrest near 8th and Market Streets in San Francisco. Despite claiming to comply with his conditions of release in that case, Erazo-Centeno continued selling drugs. In fact, during conversations with Velasquez who was participating in a community drug court program, Erazo-Centeno asked what documentation he needed to show the judge, presumably to also participate in or complete the diversion program.

Following the arrest of his co-defendants in this case, Erazo-Centeno left California, failing to appear again on the San Francisco case. The defendant took his drug dealing to Colorado where he was arrested in January 2020 and later convicted.

In comparison other co-defendants, Erazo-Centeno was a street-level dealer with no managerial role. The government agrees with the U.S. Probation Office, however, that a minor role reduction under the U.S. Sentencing Guidelines is unwarranted as Erazo-Centeno was not substantially less culpable than the average participant as required for the reduction to apply.

In light of Erazo-Centeno's relative role in the conspiracy weighed against with his unabated drug trafficking, the government recommends a slight variance from the low-end of the Guidelines and recommends the imposition of a 48-month sentence.

## II.   PROCEDURAL POSTURE

On August 8, 2019, a federal grand jury returned an Indictment charged Erazo-Centeno (and 13 co-defendants) with conspiracy to traffic drugs, in violation of 21 U.S.C. §§ 846, 841(a)(1), (b)(1)(B). Following charging, agents were unable to locate Erazo-Centeno. They later learned that he left the Bay Area for Colorado where he was arrested in January 2020 for drug dealing. Following conviction on the state charges, Erazo-Centeno was brought into federal custody. The Honorable Jacqueline Scott Corley arraigned Erazo-Centeno on November 20, 2020. The defendant subsequently pled guilty on July 21, 2021, to the sole count of a Superseding Information. At the time of sentencing, Erazo-Centeno will have spent approximately fifteen and a half months in federal custody.

//
//

## III. SENTENCING GUIDELINES CALCULATIONS

As set forth in the parties' written plea agreement, the parties agree that at minimum the following Sentencing Guidelines apply:

    a.    Base Offense Level, U.S.S.G. §§ 2D1.1(a)(5), (c)(8):    24
           (At least 100 KG but less than 400 KG of Converted Drug Weight)

    b.    Acceptance of Responsibility (U.S.S.G. § 3E1.1(a):    - 3

The plea agreement also contemplated the application of a two-level reduction, under U.S.S.G. § 3B1.2(b), for playing a minor role in the conspiracy. The government agrees with the U.S. Probation Office ("Probation") that the reduction is unwarranted. Application Note 3 of the Guidelines provision notes that the reduction applies to a defendant who is "substantially less culpable than the average participant in the criminal activity." U.S.S.G. § 3B1.2, Application Note 3(A). Here, Erazo-Centeno and his fellow street-level dealers *were* the "average participant[s]" in the conspiracy. Their daily drug dealing constituted the engine of the organization. Far from being an unwitting courier or a participant in only one of many drug deals, Erazo-Centeno accepted housing from the organization and went to work for it every day. His conduct, therefore, went well beyond the activity of a defendant who played a "minor role."

Without the role reduction, the final adjusted offense level is 21. The government agrees with Probation's assessment that Erazo-Centeno falls into Criminal History Category VI, resulting in an advisory sentencing range of 57-71. The government recommends the imposition of a nine-month downward variance, resulting in a sentence of 48 months' imprisonment.

## IV. GOVERNMENT'S SENTENCING RECOMMENDATION

The Court should impose a sentence sufficient, but not greater than necessary, to reflect the purposes of sentencing that Congress identified in 18 U.S.C. § 3553(a)(2). *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008). The Court should begin by calculating the correct sentencing range under the Sentencing Guidelines. *Id.* The Guidelines are "the 'starting point and the initial benchmark,'" *United States v. Ellis*, 641 F.3d 411, 415 (9th Cir. 2011) (quoting *United States v. Kimbrough*, 552 U.S. 85, 108 (2007)), and the Court should "remain cognizant of them throughout the sentencing process."

*United States v. Gall*, 552 U.S. 38, 50 n.6 (2007). After determining the appropriate Guidelines calculations, the Court should then evaluate the sentence for substantive reasonableness in light of the factors set out in Section 3553(a). *Carty*, 520 F.3d at 991-93. Here, the most important considerations are the nature and circumstances of the offense, the history and characteristics of the defendant, and the need to afford adequate deterrence. 18 U.S.C. § 3553(a)(1), (a)(2)(B).

> **A.  Erazo-Centeno consistently bought and distributed ounce quantities of drugs on behalf of the organization.**

Erazo-Centeno admits that for at least 13 months, he worked as a street-level drug dealer for the Viera-Chirinos/Castro-Torres drug trafficking organization. *See* dkt. 395, Plea Agreement, ¶ 2. Intercepted calls indicate that he accepted housing from the organization and moved from one location to another when the co-conspirators believed law enforcement may have been watching them. *See* Declaration of Sailaja M. Paidipaty ("Paidipaty Decl."), Ex. A, Line Sheets. Erazo-Centeno discussed this move with Castro-Torres who asked whether Erazo-Centeno or any of the other street-level dealers who would occupy the new residence had a "clean ID so that the apartment could be under someone that had not been burned already." *Id.* at Call 270. Erazo-Centeno replied that he had identification, but that he "had problems with the cops," presumably referencing his arrest two months earlier in May 2019 by officers of the San Francisco Police Department ("SFPD"). *Id.* Castro-Torres instructed the defendant to help get a picture of another individual's ID, which he did. *See id.* at Calls 270-71. As illustrated by this conversation, Erazo-Centeno remained undeterred by his pending criminal case. Instead, he coordinated with Castro Torres to maintain and conceal the housing system supporting the drug trafficking organization.

As he further admits in his plea agreement, when Erazo-Centeno bought and sold drugs for the organization, he purchased and distributed ounce quantities. During one call on June 10, 2019, he asked Velasquez to bring him one ounce of methamphetamine and one ounce of cocaine. *See* dkt. 395, Plea Agreement, ¶ 2. Approximately one week later, Erazo-Centeno asked for Velasquez to bring him another ounce of drugs. *See* Paidipaty Decl, Ex. A, Line Sheets at Call 588. While there is no question that the defendant was not distributing pound or kilogram quantities at a time, he was also not being

supplied with smaller quantities such as "eight-balls" or packages containing an eighth of an ounce of drugs. In fact, during a conversation in March 2019, Velasquez, in negotiating pricing with a supplier, told the individual that Pika and the other dealers living in that location bought a lot of drugs from Velasquez. *See* Paidipaty Decl., Ex. C, Line Sheets at Call 308. Typically, purchasing a greater quantity allows a lower wholesale price from one supplier to another. Over time, these ounce quantities added up and pumped a significant amount of drugs onto the streets of this District.

### B. Erazo-Centeno's sold drugs both before and after the conduct charged in the federal case.

Erazo-Centeno's drug dealing activity occurred long before the time period of the conspiracy at issue here. As far back as 2013, SFPD saw the defendant and co-defendant Velasquez dealing drugs in the Tenderloin. Presentence Report ("PSR") ¶ 45. Two years later, he was again stopped by SFPD for suspected drug dealing. *Id.* ¶ 46. The following year, officers stopped Erazo-Centeno twice dealing drugs with other individuals. *Id.* ¶¶ 47-48. That same year, he was convicted of being an accessory to a crime, in violation of California Penal Code Section 32. *Id.* ¶ 39.

In May 2019, SFPD officers arrested Erazo-Centeno after watching him conduct hand-to-hand drug transactions near 8th and Market Streets. *Id.* ¶ 49. At the time, the defendant possessed suspected heroin, methamphetamine, and cocaine base, as well as over $800 in cash. *Id.* Erazo-Centeno initially attended his local court proceedings and appeared to discuss them with Velasquez. During a call on June 20, 2019, Erazo-Centeno told Velasquez that he was "in the class" and asked Velasquez what documentation he needed to take to the judge. Paidipaty Decl, Ex. A, Line Sheets at Call 661. Velasquez referenced an individual named "Sylvia" and said that Erazo-Centeno only needed to show proof that he was attending the classes. *Id.* As described in the government's sentencing memorandum for Velasquez, Velasquez participated in a community drug court program following an arrest for drug in San Francisco. During intercepted calls, Velasquez referenced an individual named Sylvia who was involved with the diversion program, presumably the same individual referenced in his call with Erazo-Centeno. It therefore appears that even while his state case was pending and he was participating in programming, Erazo-Centeno continued selling drugs.

Later that year, in July and August 2019, when most of the co-defendants were arrested, agents were unable to locate and arrest Erazo-Centeno. It turns out the Erazo-Centeno left the Bay Area and went to Denver, Colorado where he began selling drugs. *See id.* ¶ 41. In January 2020, he was arrested by Colorado state officers and charged with various drug trafficking offenses. *Id.* A few months later, he was convicted and sentenced to two years' imprisonment. *Id.*

Considering the overall chronology, it appears that Erazo-Centeno has been selling drugs from 2013 to early 2020. While the government cannot prove that Erazo-Centeno knew that he was wanted on federal charges prior to leaving for Colorado, the timing of his move coupled with his compliance status in state court prior to the Fall 2019 arrests of his co-defendants indicates that he was aware of the federal operation and left the jurisdiction to evade capture. As his criminal record shows, though, just because he left the jurisdiction did not mean that he stopped his street drug sales.

While Erazo-Centeno is a street-level dealer rather than a higher-level dealer/supplier, his lengthy history of law enforcement contacts and higher Criminal History Category (CHC IV) differentiate the defendant from other street-level dealers that the Court has sentenced previously. The government recognizes that one of the convictions that adds three points to the defendant's criminal history score occurred after the present conduct, but even accounting for that, Erazo-Centeno would still be in CHC III, which is higher than many other co-defendant street-level dealers who were only in Category I. His position, therefore, is not entirely commensurate with those of co-defendants that were sentenced to time served (which ranged in cases from months to approximately one year in custody). As stated previously, the government also recognizes that Erazo-Centeno was a street-level dealer and did not occupy a higher or managerial role. Combining all of these factors, the government submits that a nine-month variance from the low-end of the Guidelines is warranted and urges this Court to impose a sentence of 48 months in custody.

//
//
//
//

## V. CONCLUSION

The government respectfully recommends that this Court impose a 48-month custodial sentence, followed by three years of supervised release, and a $100 mandatory special assessment.

DATED: February 9, 2022  

Respectfully submitted,

STEPHANIE M. HINDS  
United States Attorney

_____/s_____  
SAILAJA M. PAIDIPATY  
Assistant United States Attorney